| DECUIR, Judge.
Plaintiff, Richard D. Barnett, appeals a summary judgment rendered against him in this suit for the return of certain shares of stock from the defendant, Logan Nichols. As will be discussed, we find that genuine issues of material fact exist in this case;- hence, we conclude that summary judgment was improperly granted.
In the consolidated appeal entitled Marsh Engineering, Inc. v. Parker, 99-217 (La.App. 3 Cir.1999), 748 So.2d 498, rendered this day, Barnett appeals a judgment sustaining the defendant’s exception of res judicata, which issue we address in a separate opinion under that caption.[1]
Barnett’s claim is one of unjust enrichment. He filed suit against Nichols seeking to recover shares of stock, or the value thereof, which Nichols had obtained | ¿from Ernest Parker. At issue are two purported transfers of 1,875 shares of Campbell Wells stock. Barnett contends that he entrusted the stock to Parker (the first transfer) with the understanding that it would be returned to him upon his request. Barnett alleged that instead of holding the stock for him, Parker within months transferred it to Nichols (the second transfer), who claims to have had no knowledge that Parker was not the true owner of the stock. In the years since the transfer to Nichols, the stock has increased in value to several million dollars.
In 1985, Barnett, a petroleum engineer, entered into a partnership with Nichols, Parker, and William Davis essentially for the purchase and operation of Campbell Wells Corporation (CWC), an oil field waste disposal company. Each partner purchased 1,875 shares of CWC stock. In 1986, although CWC was highly profitable, Barnett experienced serious financial problems due to other. failing business ventures. Upon the suggestion of Parker, Barnett’s longtime friend and attorney, Barnett transferred his CWC Stock Certificate No. 7, evidencing 1,875 shares, to Parker. Coincidentally, and not relevant *497 herein, Davis was likewise in financial straits at the time and entered into an identical transaction with Parker • on the same day.[2]
The transfer of Barnett’s stock to Parker was evidenced by an act of sale which listed the consideration for the sale to be $1000 and the assumption of certain debts incurred with the purchase of CWC. Corporate records indicate that the shares were transferred via the cancellation of Stock Certificate No.7 and the issuance of Stock Certificate No. 9 in the name of Ernest Parker. Though not contesting its validity, Barnett contends that he did not read the act of sale and was not aware of its contents; |3no other attorney was involved in its execution on his behalf; and he never received the cash consideration. Barnett alleges he agreed that Parker would hold his CWC stock until such time as his financial affairs were in order. He trusted Parker to hold the stock for him for an unspecified period of time.
On January 1, 1987, Parker transferred Stock Certificate No. 9 to Nichols. Nichols then had Certificate No. 9 canceled and reissued as Certificate No.10 in his name. As consideration for this transfer of stock, Nichols, an attorney as was Parker, agreed to forego a $290,000 draw from CWC and close his law practice in order to run the company. After two corporate mergers, Logan’s 3750 shares of stock eventually became USA Waste stock allegedly worth $9 million in the mid-1990’s. The record indicates that Parker gradually divested himself of all assets and appears, from the evidence in the record, to be judgment proof.
The crux of this appeal is the question of Nichols’ good faith in acquiring Barnett’s stock from Parker. Nichols has denied any knowledge of the true nature of the transaction between Barnett and Parker; conversely, Barnett has submitted affidavit and deposition testimony showing that Nichols did in fact know of Parker’s agreement to hold Barnett’s stock for him temporarily. Under La.R.S. 9:3837, Nichols’ knowledge of wrongdoing by Parker is relevant to a determination of Nichols’ potential liability for participation in the breach of a duty by'a fiduciary. Likewise, under La. R.S. 10:8-304, Nichols’ awareness of Parker’s intended use of the proceeds of the stock sale is relevant to the question of whether Nichols should be charged with knowledge of Barnett’s adverse claim to the stock in question.
These seemingly simple questions give rise to several more complicated considerations. For instance, Nichols’ knowledge of the alleged agreement between Parker and Barnett turns on whether there was in fact a depositary arrangement |4between them; Parker and Barnett provided opposing affidavits on this issue. Likewise, Nichols’ knowledge of what Parker intended to do with the proceeds of the sale to Nichols cannot be determined without resolving the true nature of the $290,000 consideration allegedly paid to Parker. Barnett suggests that the transaction included a hidden tax maneuver and was back dated several months so that Parker’s taxable $290,000 draw would appear to be valuable consideration for the sale, while in fact it was money Parker would have received regardless of the stock transfer. Barnett also suggests that $290,000 was actually less than 25% of the true value of the stock. Nichols, an attorney and one of only two remaining partners in this venture, had to be a willing player in this game, Barnett contends.
The arguments raised by Nichols in support of summary judgment are not sufficient to defeat these overriding factual questions of knowledge, good faith, and *498 valuable consideration. First, Nichols argues that because stock by nature is fungible, Parker could have returned to Barnett any of the shares he had remaining in his possession after transferring Certifícate No. 9 to Nichols. We find no merit to this argument. The trial court must consider such questions as the nature of the agreement between Parker and Barnett — was it a depositary arrangement, and if so, is Parker allowed to return something other than exactly that which was deposited? Did Parker improperly commingle stock that had been legitimately obtained with the stock he may have surreptitiously acquired from Barnett and/or Davis?
Second, Nichols argues that his good faith and knowledge are not in dispute as Barnett has presented no contradictory evidence on those issues. We disagree. Not only did Barnett present evidence that Nichols knew Parker was holding Barnett’s stock, but he also presented evidence that Parker and Nichols intended all along to be % partners. If this evidence is to be believed, then Nichols’ bad faith [5is clear. This, too, is a factual question that cannot be resolved via summary judgment.
Finally, Nichols argues that Barnett has failed to establish the existence of any factual dispute with respect to the elements of a claim for unjust enrichment. To the contrary, the factual disputes are rampant. Did Nichols pay valuable consideration for the stock he acquired from Parker? Did Parker pay valuable consideration for the stock he acquired from Barnett? Did Barnett suffer impoverishment as a result of the transaction between Parker and Nichols? If the stock transfer between Barnett and Parker is determined to have been fraudulent, does that taint the validity of the transfer between Nichols and Parker?
This case raises a myriad of factual questions which can only be resolved after a trial on the merits. Accordingly, the summary judgment granted in favor of Logan Nichols is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to Logan Nichols.
REVERSED AND REMANDED.

. We have included in that opinion a recitation of the procedural history of these cases.

. Davis successfully litigated numerous claims against Parker in federal court in the matter entitled Davis v. Parker, No. 96-30929 (U.S. 5th Cir., May 12, 1998) (unpublished opinion).